IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DONALD K. MALONE, | ) | Case No. 3:16cv1881 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| RONALD ERDOS, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

**I.     Introduction**

After being convicted of rape, kidnapping, tampering with evidence and other offenses, Donald K. Malone was sentenced to serve an aggregate term of imprisonment of twenty-five years to life by an Ohio trial court. Years later, Malone filed his *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 seeking to vacate his convictions from case number 2006 CR 0129. ECF Doc. No. 3. He presents three grounds for relief related to case 2006 CR 0129, none of which explicitly asserts a violation of his constitutional rights. Malone also presents a fourth ground for relief challenging his retroactive classification as a sexually violent predator from an earlier case, 1995 CR 0056.[1] Id. at Page ID# 71. Respondent Erdos maintains custody of Malone (inmate number A527-016) at the Southern Ohio Correctional Facility at

---

[1] As respondent notes, "Rule 2(e) of the Rules Governing § 2254 Cases requires that a petitioner who seeks relief from judgments of more than one state court must file a separate petition covering the judgment or judgments of each court. Malone challenges separate judgments both issued by the Marion County Court of Common Pleas, thus, Malone's claims do not run afoul of Rule 2(e)." *See Henderson v. Bunting*, No. 1:14CV2557, 2015 WL 196058, at *1 (N.D. Ohio Jan. 14, 2015) (finding that a petitioner was not barred from presenting challenges to two separate state convictions in a single petition for habeas corpus).

Lucasville, Ohio. Respondent has moved to dismiss Malone's petition as untimely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §2244(d). ECF Doc. No. 18. Malone did not respond to the motion.

The matter is before the undersigned by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Malone's petition or other case dispositive motions. The undersigned agrees that Malone's petition was filed too late. I recommend that the Court GRANT the motion to dismiss.

## II. Facts

The Ohio Court of Appeals for the Third District set forth the following facts on direct appeal for case number 2006 CR 0129:[2]

> {¶ 3} On April 8, 2006, Brittany Brown invited the victim, L.K., and her friend, Hugh Pfarr, to the apartment shared by Brittany and her husband, Brad Brown. L.K., Hugh, and Brad are clients of the Marion Area Counseling Center West ("MACC West"). L.K. was a client because she is bi-polar, suffers from borderline personality, and engages in impulsive behaviors. L.K. and Hugh lived at MACC West, but Brad and Brittany's apartment was located in the city of Marion. When Brittany, L.K., and Hugh arrived at the apartment, they met Brad and Malone, who was introduced as "Demon." Malone had his own bedroom in the apartment because he resided there when he fought with his mother and did not want to stay in her home. Malone was nicknamed "Demon" because he was a founder of and a priest in a satanic "covenant" located in Orange County, California.
>
> {¶ 4} Throughout the early evening, the group laughed and joked, talking about various topics, including sex. Malone talked about his former fiancé, who was deceased, and also talked about several girls he had had relationships with. Malone showed pictures of the girls to the group and talked about wanting to kill them. Eventually, Brad and Hugh left the apartment, and Hugh returned to his residence at MACC West. While Brad was gone, Brittany, L.K., and Malone continued to joke about various topics, some of which were of a sexual nature. At approximately 11:00 p.m., L.K. decided to spend the night at the

---

[2] These facts "shall be presumed to be correct," and petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 360-61 (6th Cir. 1998); cert denied, 527 U.S. 1040 (1999).

Malone's habeas applies to two different convictions in Marion County: one is from 2006 and one is from 1995 (Case No. 1995 CR 0056). As Malone did not appeal his 1995 conviction, there are no facts set forth for that case. However, a short procedural history of that case is included in the next section.

apartment, intending to sleep on the couch in the living room. L.K. laid down on the couch, draping her legs across Malone's lap. Malone asked her if he could lie with her, and she apparently consented, so he rested on the couch behind her, placing his head on her hip and holding her legs. After a short time, L.K. indicated she was uncomfortable, and she changed her position on the couch. Malone rested his head on her inner thigh and continued rubbing her legs. During this time, Brittany was cleaning up the apartment and moving between rooms. L.K. again indicated that she was uncomfortable, and she went into Brad and Brittany's bedroom. Brittany joined her in the bedroom, and the two women played with several kittens on the bed.

{¶ 5} Malone went to his bedroom, and eventually called Brittany to him. In his room, Malone told Brittany that he wanted to have sex with L.K., and he told Brittany he would kill her and/or L.K. if they resisted. During this time, Malone was holding an unsheathed knife, which he always kept on his person. Brittany began to cry and went back to her bedroom, where she told L.K. that Malone wanted to have sex with her. L.K. also began to cry and said she did not want to have sex with Malone, but Brittany told her there would be consequences if she did not comply. Malone walked into the bedroom and sat on a chair, holding his unsheathed knife. Malone told Brittany to leave the room and prevented L.K. from leaving. He told L.K. to give him what he wanted, and then she could leave. Holding his knife in front of her, Malone told L.K. he would kill her if she failed to cooperate. L.K. decided to "go ahead and get it over with," so she followed Malone to his bedroom.

{¶ 6} In the bedroom, Malone told her to undress, and then he took off his clothes. Malone told L.K. to lie on the bed, and he attempted to insert his penis into her vagina. Failing to do so, he licked her vagina and noted that she had a "fat pussy." Malone then used Vaseline as a lubricant and had vaginal intercourse with L.K.. After Malone ejaculated in L.K.'s vagina, she got dressed, and Malone made her go into the bathroom. In the bathroom, Malone told L.K. to take a shower to get rid of any evidence. He filled a mustard bottle with warm water, and made her insert the tip of the bottle into her vagina to douche. After she douched with the mustard bottle, Malone took the bottle, inserted it into her vagina and squeezed the bottle one more time. During this time, Malone had his knife with him. Malone then threatened L.K. that he or his "dudes" would kill her and/or her mother if she told anybody about the rape. While L.K. was in the shower, Brad returned to the apartment. Malone went out to see who was in the apartment and told Brad, "I raped the bitch."

{¶ 7} When they got out of the bathroom, L.K. went into Brad and Brittany's bedroom. Malone followed her into the bedroom and again threatened to kill her if she told the police. He also threatened Brad and Brittany and told them that if any police or attorneys asked about the rape, they were to say they had been asleep and had no knowledge. Malone then went into the kitchen and made fried chicken. Brad and Brittany ate some of the chicken while L.K. remained in the bedroom. Brad and Brittany returned to the bedroom, and Malone entered a short time later, carrying the sheets from his bed, the mustard bottle, and Vaseline in a plastic bag, which he put in his backpack. Malone stated he was going to LaRue to burn the evidence. After Malone left the apartment, L.K. fell

asleep in Brad and Brittany's bed. When she awoke, she left the apartment and returned to her apartment at MACC West.

{¶ 8} After Malone left the apartment, he was stopped by a city police officer for jaywalking. Malone identified himself to the officer and consented to a search of his bag. Malone told the officer that he carried the bedsheet so he could lie down if he got tired, he had the mustard bottle for drinking water, and he had the Vaseline in case his thighs got chafed from walking. The officer found his story strange, but having no reason for an arrest, he let Malone go on his way.

{¶ 9} On April 10, 2006, L.K. reported the incident to the police and was examined by a sexual assault nurse at a local hospital. Officers investigated at Brad and Brittany's apartment, where they placed Malone under arrest. As part of their investigation, officers seized a calendar on which Malone had written "demon night" on April 8.

*State v. Malone*, 2007-Ohio-5484, ¶¶ 3-*, *aff'd,* 2009-Ohio-310, 121 Ohio St. 3d 244, 903 N.E.2d 614.

### III. State Procedural History

#### A. 1995 Conviction

In 1995 in the Marion County Court of Common Pleas, Malone pleaded guilty to an amended indictment as follows: corruption of a minor (R.C. 2907.04(A))(Count I); abduction (R.C. 2905.02)(A)(2))(Count VI); and aggravated assault (R.C. 2903.12)(A)(2))(Count VII). ECF Doc. No. 18-1, Page ID# 190. All of the other counts in the original indictment, as well as the offense of violence specification on Count VII, were dismissed upon the prosecutor's motion. Malone was sentenced to a definite term of two years on Count I, an indefinite term of 5-10 years on Count VI, and a definite term of one and a half years on Count VII to be served concurrently. Id. Malone did not appeal the sentence.

On January 16, 2004, Malone was classified as a sexual predator for purposes of sexual offender registration and notification in accordance with the retroactive application of Ohio Revised Code 2950. Id. at Page ID# 248. Malone did not appeal.

4

### B. 2006 Conviction

On April 19, 2006, the Marion County Grand Jury issued an indictment charging Malone with two counts of rape (R.C. 2907.02(A)(2))(Counts I and III); one count of kidnapping (R.C. 2905.01(A)(4))(Count II); one count of abduction (R.C. 2905.02(A)(2))(Count IV); three counts of intimidation of an attorney, victim or witness in a criminal case (R.C. 2921.04(B))(Counts V, VI and VII); one count of tampering with evidence (R.C. 2921.12(A)(1))(Count VIII); and one count of possessing criminal tools (R.C. 2923.24(A))(Count IX). ECF Doc. No. 18-1, Page ID# 163-65 (Exhibit 3). Counts I, II, and III carried sexually violent predator specifications, and Count II carried a sexual motivation specification. Id. at 163. On April 24, 2006, Malone entered a pleaded not guilty. Id. at 166 (Exhibit 4).

After a trial, the jury found Malone not guilty on Count IV (abduction) and Count VII (intimidation of an attorney, victim or witness) and guilty on the rest of the charges. Id. at 167 (Exhibit 5). Malone then pleaded guilty to the sexually violent predator specifications. Id. at 170 (Exhibit 6, 7). On July 17, 2006, the court found that the kidnapping count was an allied offense to the Count I rape charge, and the State elected to have Malone sentenced on the rape conviction. Id. at 168 (Exhibit 5). The court sentenced Malone to serve indefinite prison terms of ten years to life each on Counts I and III, five year terms each on Counts V, VI, and VIII, and twelve months on Count IX. Id. The two ten-years-to-life terms were ordered to be served consecutively, and the remaining sentences were to be served concurrently to each other but consecutively to the ten-year-to-life terms. Malone's aggregate sentence was to serve a prison term of twenty-five years to life. Id.

### C. Direct Appeal

Malone appealed his conviction to the Third District Court of Appeals, raising two manifest weight of the evidence assignments of error.[3] On October 15, 2007, the court of appeals affirmed the judgment of the trial court as to Counts I, III, V, VIII, and IX, but reversed the conviction of Count VI (intimidation of a witness as to Brittany).[4] ECF Doc. No. 18-1, Page ID# 171-78. Although Malone's assignment of error challenged the weight of the evidence, the court of appeals recognized a plain error with regard to the sufficiency of the evidence on that claim. The court acknowledged that the decision was in conflict with other appellate decisions and certified the following question for review to the Ohio Supreme Court:

> Is a conviction for intimidation of a witness under R.C. 2921.04(B), which requires the witness to be involved in a criminal action or proceeding, sustainable where the intimidation occurred after the criminal act but prior to any police investigation of the criminal act, and thus, also prior to any proceedings flowing from the criminal act in a court of justice?

(Exhibit 7). The Ohio Supreme Court determined that a conflict did exist and, on February 3, 2009, affirmed the court of appeals' decision to reverse Malone's witness intimidation conviction. ("[W]e hold that when no crime has been reported and no investigation or prosecution has been initiated, a witness is not 'involved in a criminal action or proceeding' for purposes of R.C. 2921.04(B).") Id. at 181 (Exhibit 10); *State v. Malone*, 2009-Ohio-310, ¶ 30, 121 Ohio St. 3d 244, 249, 903 N.E.2d 614, 618.

---

[3] Malone's assignments of error to the court of appeals were submitted as follows (1) "Defendant-Appellant's convictions for rape, kidnapping, intimidation, and possession of criminal tools are contrary to the manifest weight of the evidence," and (2) "Defendant-Appellant's conviction for tampering with evidence is contrary to the manifest weight of the evidence." (Exhibit 7)

[4] The court of appeals affirmed the intimidation of the victim claim as to L.K.

### D. Federal Habeas Corpus Petition

In July 2016, Malone filed this petition for a writ of habeas corpus.[5] He alleges the following four grounds for relief:

> **GROUND ONE:** Rape the judge never honour the rape kit or the sexual assault exam on [the victim].
>
> **Supporting Facts:** Ms. Darleen Schoonard at Marion general Hospital.... She testify for the state of Ohio. Her testimony was [the victim] was not raped, it was consensual sex not rape. That should be enough evidence to overturn the rape and get my freedom back. Why have a rape kit dunn if the court is not going to honour it.
>
> **GROUND TWO:** Tampering with evidence.
>
> **Supporting Facts:** The fact is [the victim] testify she went straigt home took a shower brushed her teeth and douche her vagina. If she was raped why did she not go straigt to a police department or straigt to a local hospital. But the hit me with tampering with evidence. But jury did not believe my testimony about the evidence.
>
> **GROUND THREE:** Abduction she followed me into the bedroom.
>
> **Supporting Facts:** Me and L.K. had an understanding about haveing sex there was no force or abduction. She was willy (sic) to have sex with me. I am innocent of this crime as well.
>
> **GROUND FOUR:** Violent predator law 2004, Case Number 95-CR-0056.
>
> **Supporting Facts**: A women prosecutor attorney made up false crimes by saying I had molesting my #2 year old sister. I have no criminal history of touching littler kids. You can ask Marion County Children Services...They let me stay with my mom and she had a 4 year old girl and a 2 year old boy.

ECF Doc. No. 4, at Page ID# 66-69.

### IV. Law and Analysis

Respondent moves to dismiss Malone's petition on the ground that it is time-barred under applicable law. ECF Doc. No. 18, Page ID# 146. Respondent further asserts that neither

---

[5] Malone's habeas petition was docketed on July 6, 2016, and signed on July 1, 2016. See ECF Doc. No. 3, at Page ID# 76.

7

equitable tolling nor Malone's claim of actual innocence is sufficient to overcome the statute of limitations bar. Id. at 148-52.

### A.     Malone's filed his petition after the AEDPA Statute of limitations expired

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the AEDPA, a person in custody under a judgment of a state court must file an application for a writ of habeas corpus within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Cases become final on direct review for purposes of §2244(d)(1)(A) when *certiorari* is denied or the time to file a *certiorari* petition expires. *Lawrence v. Florida*, 549 U.S. 327, 333 (2007) (citing *Clay v. United States*, 537 U.S. 522, 527–28, n.3 (2003)). If *certiorari* is not sought, cases become final upon the dismissal of the state appeals or the expiration of the time for seeking state appeals of the conviction and sentence. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 459-60 (6th Cir. 2012) (*citing Gonzalez v. Thaler*, 132 S.Ct. 641 (2012) (judgment of conviction final at the expiration of time for pursuing direct review in the state court)).

The first three grounds of Malone's petition relate to his 2006 conviction. ECF Doc. No. 3, Page ID# 66-71. Malone filed a direct appeal from that conviction and was partially successful in that appeal. On February 3, 2009, the Ohio Supreme Court affirmed the court of

8

appeals' decision to reverse Malone's witness intimidation conviction as to one witness. Respondent argues that "[g]iving Malone the benefit of the doubt, his judgment of conviction did not become final until the state's 90 days to seek *certiorari* expired."[6] ECF Doc. No. 18, Page ID# 148. Assuming that Malone's conviction become final 90 days after the Ohio Supreme Court affirmed the court of appeals' decision, the judgment became final May 4, 2009. Thus, Malone's AEDPA one-year limitations period began running no later than May 5, 2009. Absent tolling, the statute of limitations period expired no later than May 5, 2010. Malone did not file his habeas petition until July 2016, more than six years later.

Malone's fourth ground for relief relates to his classification as a sexual predator in his 1995 Marion County Court of Common Pleas case, 1995 CR 0056. See ECF Doc. No. 18-1, Exhibit 17, Page ID# 233-49. Malone was retroactively classified as a sexual predator in that case on January 16, 2004. ECF Doc. No. 18-1, Page ID# 248. Malone had 30 days to appeal that classification determination but failed to do so. Ohio App. R. 4(A). Thus, his sexual predator classification became final on February 16, 2004. Absent tolling, Malone's AEDPA one-year limitations for filing a habeas petition related to that ruling expired on February 17, 2005. Malone's habeas petition was filed more than ten years after the expiration of the statute of limitations on this claim.

  **B.**  **Malone is not entitled to equitable tolling.**

The AEDPA's §2244(d)(1) statute of limitations can be equitably tolled,[7] "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control." *Hall v. Warden, Lebanon Corr. Inst.,* 662 F.3d 745, 749 (6th Cir.

---

[6] Respondent notes that "The issue that was raised in the Ohio Supreme Court was an issue of Ohio law and not a constitutional issue. Thus, the state could not successfully have filed an appeal in the United States Supreme Court, but in the abstract, the state could have sought *certiorari*."

[7] The AEDPA also provides grounds for statutory tolling. None is even arguably applicable here.

2011) (*quoting Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)), cert. denied, 133 S. Ct. 187 (2012). *See also, Holland v. Florida*, 560 U.S. 631, 649 (2010) (the statute of limitations for habeas petitions is "subject to equitable tolling in appropriate cases."). Malone bears the burden of establishing that equitable tolling should apply here. *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003). The petitioner must point to extraordinary circumstance that prevented timely filing. Moreover, equitable tolling is granted "sparingly." *Hall*, 662 F.3d at 749 (*quoting Robertson*, 624 F.3d at 784).

The Sixth Circuit has endorsed the two-part test established in *Holland v. Florida* as the "governing framework" to apply in determining the applicability of equitable tolling. *Hall,* 662 F.3d at 750 (*citing Robinson v. Easterling,* 424 F. App'x 439, 442 n.1 (6th Cir. 2011), cert. denied, 132 S. Ct. 456 (2011)). Therefore, a habeas petitioner is entitled to equitable tolling only if he demonstrates that (1) "he has been diligent in pursuing his rights;" and (2) that "an extraordinary circumstance caused his untimely filing." *Hall,* 662 F.3d at 750; *see also, Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S. Ct. 1807, 1815, 161 L. Ed. 2d 669 (2005). Malone has not presented any evidence that he pursued his claims with diligence or that an extraordinary circumstance caused his 6 and 10 year delays in filing. Malone generally claims that he is unaware of how to complete legal work but this does not explain such a lengthy delay in filing his habeas petition. "Under long-established principles, petitioner's lack of diligence precludes equity's operation." *Pace,* 544 U.S. at 419. To the extent that Malone's petition can be construed to suggest that he is mentally incompetent to perform legal work,[8] this bare suggestion falls short of meeting Malone's burden to establish entitlement to equitable tolling. As the Sixth Circuit has explained:

---

[8] Malone alleges several times in the petition that he was born with brain damage at birth and had emergency surgery at his birth.

> To obtain equitable tolling of AEDPA's statute of limitations on the basis of mental incompetence, a petitioner must demonstrate that (1) he is mentally incompetent and (2) his mental incompetence caused his failure to comply with AEDPA's statute of limitations.
>
> In short, a blanket assertion of mental incompetence is insufficient to toll the statute of limitations. Rather, a causal link between the mental condition and untimely filing is required

Malone was able to file his habeas petition *pro se* in 2016 as well as several subsequent motions. He does not explain how he could have had the capacity to file his petition and numerous motions in 2016 but was unable to file the petition within the statute of limitations period. Malone filed his petition more than 10 years late on the 1995 classification and more than six years late on his 2006 conviction. Even assuming Malone was unaware of the AEDPA statute of limitations deadline, that reason does not justify equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) (The Sixth Circuit "has repeatedly held that ignorance of the law alone is not sufficient to warrant equitable tolling.")(Internal quotation omitted).

Because Malone has not shown that he pursued his claim with diligence, or that some extraordinary circumstance prevented him from filing a timely petition, he has not met his burden to establish that equitable tolling should be applied.

    C.    **Malone has not produced evidence of his actual innocence**

In *McQuiggin v. Perkins*, ___U.S.___, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013), the Supreme Court held that a claim of actual innocence, if backed up by proper evidence, may overcome the expiration of AEDPA's one-year statute of limitations. The Court noted that a claim of actual innocence is not a request for equitable tolling; rather, it is a request for an equitable exception to the § 2244(d)(1) statute of limitations. Id. at 1931. The Supreme Court explained, however, that "tenable actual-innocence gateway pleas are rare." *McQuiggin,* 133 S.Ct. at 1928. In such cases, a petitioner must "support his allegations of constitutional error

11

with *new* reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - *that was not presented at trial.*" *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)(Emphasis added).

The Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup,* 513 U.S. at 316, 115 S.Ct. 851. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." Id. at 317, 115 S.Ct. 851. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. at 327, 115 S.Ct. 851. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id*. at 321, 115 S.Ct. 851.

Here, Malone argues that he is actually innocent. More specifically, he asserts that the "rape kit or the sexual assault examination" prove that he did not rape the victim and, instead, he and the victim engaged in consensual sex. The record refers to an examination by a sexual assault nurse the same day L.K. reported the incident to the police, both of which occurred the

12

day after the assault. *State v. Malone*, 2007-Ohio-5484, ¶ 9. The Court of Appeals noted that the report was entered into evidence and the nurse who performed the examination, Darlene Schoonard, testified at the trial. Id. at ¶10. Neither the report nor Ms. Schoonard's testimony are currently before the court. But it is clear that this evidence was presented at trial and, therefore, cannot be considered "new" evidence.[9] *See e.g.,* ECF Doc. No. 3, Page ID# 66 ("Darlen Schoonard…testify for the state of ohio…[that the victim] was not rape't [*sic*] it was consensual-sex…that should ben enough evidence to overturn the rape and get my freedom back. Why have a rape kit dunn if the courts is not going to honour it."); ECF Doc. No. 18-1, Page ID# 174.

"To be credible, a claim of actual innocence must be based on reliable evidence *not presented at trial*." *Calderon v. Thompson*, 523 U.S. 538, 559, 118 S. Ct. 1489, 1503, 140 L. Ed. 2d 728 (1998) *citing Schlup*, 513 U.S. at 324 (internal quotation omitted and emphasis added). Because Malone has not offered any new reliable evidence of his factual innocence that was not previously presented at his trial, he has not met the actual innocence standard. Malone's mere repeated statements that he is actually innocent are not enough to carry his burden of producing new evidence as a matter of law. The Court should find that Malone's petition is untimely and barred by the statute of limitations in 28 U.S.C. § 2241(d)(1).

### D. All of Malone's pending motions should be dismissed

After filing his habeas petition, Malone filed several non-dispositive motions (ECF Doc. Nos. 6, 16, 20, and 21) as well as various "letters" to the Court. (ECF Doc. Nos. 11, 12, 14, 15,

---

[9] Furthermore, it should be noted that Malone admitted to having sex with the victim, contending it was consensual. Because rape test kits are administered only to learn *who* had sexual contact with an alleged rape victim, Malone's admission that he had sex with L.K. means that the rape kit would have contributed nothing to the issue of whether sexual contact happened. It did and Malone admits it. Also, rape kits don't reveal what a victim of sexual contact was thinking. They cannot determine whether someone consented to sex, only whether sex happened at all. Therefore, Malone's indication that the trial court's handling of the rape kit evidence somehow led to his wrongful conviction at a time when he was actually innocent is, unfounded.

17, and 19). His motions included a motion for copies of various trial documents, two different motions for appointment of counsel, and a motion to order his transfer to another prison. (ECF Doc. Nos. 6, 16, 20, and 21). Because the undersigned is recommending that Malone's petition be dismissed, I further recommend that the outstanding motions for copies of documents and appointment of counsel (ECF Docs. 16, 20, and 21) and any requests in his "letters" that could be deemed to be motions, should be overruled as moot.[10] The request for prison transfer for the duration of his habeas case (Doc. 6) is also mooted by the dismissal of Malone's case.[11]

E.   **No certificate of appealability should be granted**

When a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold. In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the

---

[10] The motions for document copies and appointment of counsel can be dismissed on the merits as well for the reasons that follow.

On December 20, 2016, more than a month after Erdos filed the motion to dismiss, Malone filed a letter requesting copies of various documents: (1) a copy of his criminal history; (2) a copy of L.K.'s sexual assault examination and testimony, (3) a copy of Darlene Schoonard's testimony, and (3) a copy of his 2004 sexually violent predator hearing in case 95-CR-0056. ECF Doc. No. 21. Expansion of the record in habeas cases "is not mandatory ... and is left to the discretion of the trial judge." *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir.1988). Malone has not demonstrated how any of these documents would further his claims, particularly in consideration of the statute of limitations problem. Thus, the undersigned finds that expansion of the record to include these documents is not necessary.

With regard to the motions for appointment of counsel, it is well established that there is no constitutional right to counsel in habeas proceedings. *McCleskey v. Zant*, 499 U.S. 467, 495, 111 S.Ct. 1454, 113 L.Ed.2d 517(1991); *see also Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir.2002); *Douglas v. Maxwell*, 357 F.2d 320, 321 (6th Cir. 1966). Appointment of counsel in a habeas proceeding is mandatory only if the district court determines that an evidentiary hearing is required. *Lemeshko v. Wrona*, 325 F.Supp.2d 778, 787 (E.D.Mich.2004); Rules Governing § 2254 Cases, Rule 8(a), 28 U.S.C. § 2254. If no evidentiary hearing is necessary, the appointment of counsel in a habeas case is governed by the Criminal Justice Act which provides that appointment may be provided whenever the interests of justice or due process so require. 18 U.S.C. § 3006A(a)(2); *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir.1986). The interests of justice do not require appointment of counsel in this matter.

[11] Moreover, habeas corpus proceedings provide a mechanism for a prisoner to challenge the "legality or duration" of confinement, not the "conditions of…confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 1833, 36 L.Ed.2d 439 (1973). A civil rights action is the proper mechanism for challenging the conditions of confinement. *Id.* at 498–99, 93 S.Ct. at 1840–41.

14

denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 485, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)(emphasis added). As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id*. at 486.

If the Court accepts the foregoing recommendations, Malone cannot show that the Court's rulings on the statute of limitations issues are debatable. Thus, the undersigned recommends that the Court should conclude that Malone is not entitled to a certificate of appealability in this case.

**V.     Conclusion**

Donald Malone's petition for a writ of habeas corpus was filed years after the statute of limitations expired.  He has presented no grounds by which to overcome the effect of the statute of limitations.  I recommend that the court GRANT respondent's motion to dismiss, DISMISS the petition and OVERRULE Malone's several motions.

Dated: February 2, 2017

Thomas M. Parker
United States Magistrate Judge

_____

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).